IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAMPAIGN LEGAL CENTER<br>1101 14th Street NW, Ste. 400<br>Washington, DC 20005,<br><br>        Plaintiff,<br><br>        v.<br><br>FEDERAL ELECTION COMMISSION<br>1050 First Street NE<br>Washington, DC 20463,<br><br>        Defendant. | Civil Action No. 20-cv-02842 |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

Public transparency of the true sources of money spent to influence American elections is a cornerstone of campaign finance law and essential to the proper functioning of our democratic process. To this end, longstanding federal law protects the public's right to know who is spending in campaigns by prohibiting the use of "straw donors" to conceal the identities of political contributors and by requiring comprehensive disclosure of contributions and expenditures on the part of organizations that qualify as political committees.

On February 3, 2020, Plaintiff Campaign Legal Center ("CLC") filed an administrative complaint with the Federal Election Commission ("FEC" or "Commission"), alleging that the Society of Young Women Scientist and Engineers LLC ("SYWSE"), its manager Jennifer Lam, and other unknown persons violated the straw donor ban in the Federal Election Campaign Act

1

("FECA" or "Act"), 52 U.S.C. § 30122, by making contributions in the name of another person. CLC's administrative complaint presents evidence that SYWSE was created for the sole purpose of laundering contributions to 1820 PAC, a federal super PAC, and the complaint further alleges that, given SYWSE's limited purpose of funneling contributions from other sources to a federal super PAC, SYWSE and those who control the company also violated FECA by failing to register SYWSE as a political committee and file periodic disclosure reports as required by law.

      CLC's administrative complaint has now been pending with the FEC for more than 240 days, and, on information and belief, the FEC has taken no action on this matter since receiving the complaint in early February. Plaintiff thus respectfully requests that this Court declare the FEC has acted contrary to law on account of its failure to act on the administrative complaint and order the Commission to conform within 30 days. If the FEC does not conform to the Court's order within 30 days, FECA authorizes Plaintiff to commence a civil action against SYWSE, Jennifer Lam, and any other person who created, operated, or contributed to SYWSE, in order to enforce FECA's straw donor ban and its registration and disclosure requirements for political committees.

***

      1.      Plaintiff brings this action under FECA, 52 U.S.C. § 30109(a)(8)(A), for unlawful agency delay.

      2.      Based on publicly available information, there is reason to believe that Jennifer Lam and any other person who created, operated, or contributed funds to or in the name of SYWSE violated 52 U.S.C. § 30122 by "[m]aking a contribution of money . . . and attributing as the source of the money . . . another person [i.e., SYWSE] when in fact [the persons who created, operated, and/or contributed to SYWSE were] the source." 11 C.F.R. § 110.4(b)(2)(ii).

3. Publicly available information also provides reason to believe that SYWSE violated FECA's straw donor ban by "knowingly permit[ting] [its] name to be used to effect" a contribution made in the name of another person. 52 U.S.C. § 30122; *see also* 11 C.F.R. § 110.4(b)(2)(i).

4. Publicly available information about SYWSE's overall activities indicates there is also reason to believe that SYWSE met federal law's definition of "political committee," and that SYWSE, Jennifer Lam, and any other person who created or operated SYWSE violated 52 U.S.C. §§ 30102-30104 by failing to organize and register SYWSE as a federal political committee and by failing to file periodic disclosure reports with the FEC.

5. On February 3, 2020, Plaintiff filed an administrative complaint with the FEC alleging that SYWSE, Jennifer Lam, and any other person who created or operated SYWSE violated FECA's straw donor prohibition and its political committee registration and reporting requirements.[1]

6. FECA provides administrative complainants with a right of action against the FEC if the agency fails to act on a complaint within 120 days of its filing, at which point "the court may declare that . . . the failure to act is contrary to law, and may direct the Commission to conform with such declaration within 30 days, failing which the complainant may bring . . . a civil action to remedy the violation involved in the original complaint." 52 U.S.C. § 30109(a)(8)(C).

7. As of the date of this filing, Plaintiff's administrative complaint has been pending before the FEC for more than 240 days, and, on information and belief, the Commission has taken no action on the complaint since receiving it. Plaintiff therefore requests that this Court declare the FEC has acted contrary to law by failing to act on the administrative complaint and order the Commission to conform within 30 days.

---

[1] *See* Ex. 1 (Admin. Compl.) ¶¶ 2-3.

**JURISDICTION AND VENUE**

8. This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 52 U.S.C. § 30109(a)(8)(A). This Court also has jurisdiction over this action under 28 U.S.C. § 1331.

9. Venue lies in this district under 52 U.S.C. § 30109(a)(8)(A).

**THE PARTIES**

10. Plaintiff Campaign Legal Center is a nonpartisan, nonprofit organization that, among other activities, works to strengthen American democracy through federal, state, and local efforts to ensure the public has access to information about the financing of U.S. election campaigns.

11. As part of these efforts, CLC conducts research, writes reports and articles, and provides expert analysis to the media. CLC also litigates campaign finance matters throughout the country; files administrative complaints with the FEC to request that enforcement actions be taken against those who violate campaign finance laws; participates in rulemaking and advisory opinion proceedings before the FEC to ensure that the agency is properly interpreting and administering FECA; and engages in legislative advocacy for campaign finance reform measures at the federal, state, and local government levels.

12. CLC relies on the accurate and complete reporting of campaign finance information in order to carry out activities central to its organizational mission, including the production of materials to educate the public about election spending and the true sources and scope of candidates' financial support. These activities are obstructed when, as here, information that is subject to mandatory disclosure under FECA is not publicly available.

13.     CLC devotes significant resources to assisting reporters and members of the media in their investigations into candidates' financing and relationships with donors so that the public at large is equipped with information necessary to evaluate candidates and electoral messaging and, ultimately, is able to cast informed votes on Election Day.

14.     In addition, CLC uses its analyses of federal campaign finance data to support its administrative practice at the FEC and before state and local election agencies, and to defend campaign finance laws as part of an active docket of cases in federal and state courts.

15.     Defendant FEC is an independent federal agency charged with the administration and civil enforcement of FECA. 52 U.S.C. § 30106(b).

## BACKGROUND

*Governing Law*

**I.     FECA's Straw Donor Ban**

16.     FECA provides that "[n]o person shall make a contribution in the name of another person or knowingly permit his name to be used to effect such a contribution, and no person shall knowingly accept a contribution made by one person in the name of another person." 52 U.S.C. § 30122.

17.     The FEC regulation implementing FECA's statutory ban on straw donor contributions lists the following examples of "contributions in the name of another":

a.  "Giving money or anything of value, all or part of which was provided to the contributor by another person (the true contributor) without disclosing the source of money or the thing of value to the recipient candidate or committee at the time the contribution is made." 11 C.F.R. § 110.4(b)(2)(i).

  b. "Making a contribution of money or anything of value and attributing as the source of the money or thing of value another person when in fact the contributor is the source." 11 C.F.R. § 110.4(b)(2)(ii).

18. FECA's requirement that a contribution must be made in the name of its true source promotes Congress's objective of ensuring the accurate and complete disclosure of funds received by federal candidates and political committees, and also assures that members of the public have the information required to assess candidates for federal office and to make informed choices in elections.[2]

19. On April 1, 2016, then-FEC Chairman Matthew Petersen and Commissioners Caroline Hunter and Lee Goodman issued "clear public guidance on the appropriate standard" for determining whether an LLC was used to facilitate a contribution in the name of another. Statement of Reasons of Chairman Matthew S. Petersen and Commissioners Caroline C. Hunter and Lee E. Goodman, MURs 6485, 6487, 6488, 6711, 6930, at 2 (Apr. 1, 2016), https://www.fec.gov/files/legal/murs/6487/16044391129.pdf. In their guidance, these FEC Commissioners advised that "the proper focus in these matters is whether the funds used to make a contribution were intentionally funneled through a closely held corporation or corporate LLC for the purpose of making a contribution that evades the Act's reporting requirements, making the individual, not the corporation or corporate LLC, the true source of the funds." *Id.*; *see also id.* at 12. The Commissioners also indicated that the relevant factors to be considered included whether:

> there is evidence indicating that the corporate entity did not have income from assets, investment earnings, business revenues, or bona fide capital investments, or was created and operated for the sole purpose of making political contributions.

---

[2]  *United States v. O'Donnell*, 608 F.3d 546, 553 (9th Cir. 2010) ("[T]he congressional purpose behind [52 U.S.C. § 30122]—to ensure the complete and accurate disclosure of the contributors who finance federal elections—is plain.").

> These facts would suggest the corporate entity is a straw donor and not the true source of the contribution.

*Id.* at 12.

## II. FECA's Political Committee Registration and Disclosure Requirements

20. FECA defines a "political committee" as "any committee, club, association, or other group of persons which receives contributions aggregating in excess of $1,000 during a calendar year or which makes expenditures aggregating in excess of $1,000 during a calendar year." 52 U.S.C. § 30101(4)(A).

21. In *Buckley v. Valeo*, 424 U.S. 1 (1976), the Supreme Court construed FECA's definition of "political committee" to "only encompass organizations that are under the control of a candidate or the major purpose of which is the nomination or election of a candidate." *Id.* at 79. A decade later, in *FEC v. Massachusetts Citizens for Life, Inc.*, 479 U.S. 238 (1986), the Court invoked the "major purpose" test in the context of analyzing the activities of a 501(c)(4) corporation, explaining that if an organization's election-related spending activities "become so extensive that *the organization's major purpose may be regarded as campaign activity*, the corporation would be classified as a political committee." *Id.* at 262 (emphasis added). Under such circumstances, the Court explained, the organization would be "subject to the obligations and restrictions applicable to those groups whose primary objective is to influence political campaigns." *Id.* In *McConnell v. FEC*, 540 U.S. 93 (2003), the Supreme Court again restated the "major purpose" test for determining political committee status as it was articulated in *Buckley*. *Id.* at 170 n.64.

22. In its regulatory guidance, the FEC has explained that:

> [D]etermining political committee status under FECA, as modified by the Supreme Court, requires an analysis of both an organization's specific conduct—whether it received $1,000 in contributions or made $1,000 in expenditures—as well as its

overall conduct—whether its major purpose is Federal campaign activity (*i.e.*, the nomination or election of a Federal candidate).

Supplemental Explanation and Justification on Political Committee Status, 72 Fed. Reg. 5595, 5597 (Feb. 7, 2007).

23.  Accordingly, there is a two-prong test used for determining political committee status under FECA: (1) whether an organization has received "contributions"[3] or made "expenditures"[4] in excess of $1,000 in a calendar year, and, if so, (2) whether the organization's "major purpose" is the "nomination or election of a candidate," as required by *Buckley*.

24.  An organization that meets the definition of "political committee" under the two-prong analysis must file a statement of organization with the FEC, 52 U.S.C. § 30103; comply with the organizational and recordkeeping requirements of 52 U.S.C. § 30102; and file periodic reports with the FEC disclosing its contributions, expenditures, and debts, in accordance with 52 U.S.C. § 30104. The periodic reports filed by a federal political committee must include, among other information, the name and address of any donor who has made contributions in excess of $200 to the committee in the calendar year. 52 U.S.C. § 30104(b)(3).

25.  Courts have repeatedly recognized the critical role of campaign finance disclosure in informing the electorate about sources of political speech. *See, e.g.*, *Citizens United v. FEC*, 558 U.S. 310, 369 (2010) ("[T]he public has an interest in knowing who is speaking about a candidate shortly before an election."); *Stop This Insanity Inc. Emp. Leadership Fund v. FEC*, 761 F.3d 10, 16 (D.C. Cir. 2014) (emphasizing the "First Amendment rights of the public to know the identity

---

[3]  In FECA, a "contribution" is defined as "any gift, subscription, loan, advance, or deposit of money or anything of value made by any person for the purpose of influencing any election for Federal office." 52 U.S.C. § 30101(8)(A)(i).

[4]  FECA defines an "expenditure" as "any purchase, payment, distribution, loan, advance, deposit, or gift of money or anything of value, made by any person for the purpose of influencing any election for Federal office." 52 U.S.C. § 30101(9)(A)(i).

of those who seek to influence their vote"); *CREW v. FEC*, 209 F. Supp. 3d 77, 81 (D.D.C. 2016) ("[D]isclosure 'open[s] the basic process of our federal election[s] to public view,' . . . by 'provid[ing] the electorate with information' concerning the sources and outlets for campaign money . . . ." (internal citations omitted)).

*Facts*

26. On November 26, 2019, SYWSE filed articles of organization as a limited liability company with the Hawaii Department of Commerce and Consumer Affairs.[5] SYWSE's registration records identify Jennifer Lam as its registered agent and manager, and list SYWSE's mailing address as P.O. Box. 2394, Honolulu, HI 96804.[6]

27. On December 31, 2019, approximately five weeks after filing its articles of organization, SYWSE made a contribution of $150,000 to 1820 PAC, a federal independent expenditure-only political committee—commonly known as a "super PAC."[7] On 1820 PAC's FEC report itemizing the contribution from SYWSE, SYWSE's address is provided as 335 Merchant Street, Unit 2394, Honolulu, HI 96804.[8] This street address is associated with a U.S. Post Office

---

[5] *See* SYWSE, Articles of Organization for Limited Liability Company, Hawaii Dep't of Commerce and Consumer Affairs (Nov. 26, 2019) (attached as Exhibit A to Admin. Compl. (Ex. 1)).

[6] *Id.*

[7] 1820 PAC, 2019 Year-End Report, FEC Form 3X, at 9 (filed Jan. 31, 2020), https://docquery.fec.gov/pdf/603/202001319184108603/202001319184108603.pdf. The FEC report attributes the contribution to the "Society of Young *Woman* Scientist and Engineers LLC" (emphasis added), which appears to be a misspelling.

[8] *Id.*; Downtown Honolulu—Post Office, United States Postal Service, https://tools.usps.com/find-location.htm?location=1439659 (last visited Oct. 5, 2020) (showing post office located at 335 Merchant St., Honolulu, HI). The 335 Merchant Street address also houses the Hawaii Department of Commerce & Consumer Affairs. *See* State of Hawaii Department of Commerce and Consumer Affairs, Contact, https://cca.hawaii.gov/contact/ (last visited Oct. 5, 2020).

Box, and the address's "unit" number, 2394, is identical to the P.O. box number listed for SYWSE's mailing address on its articles of organization.

28.     Other than SYWSE's articles of organization and the FEC report disclosing the $150,000 contribution made by the company, there is virtually no public record of, or information available about, SYWSE and its activities:

  a. SYWSE does not maintain a public-facing website or social media accounts.

  b. A Google search for "Society of Young Women Scientist and Engineers" (and close variants of that search) yields no relevant results.[9]

  c. No information about SYWSE is available through the Better Business Bureau,[10] Bloomberg's company profile database,[11] EDGAR,[12] the U.S. Patent & Trademark Office's Trademark Electronic Search System,[13] Hawaii's Professional & Vocational Licensing Database,[14] or the Hawaii Chamber of Commerce.[15]

---

[9] Google.com, Search results for "Society of Young Woman Scientist and Engineers," "Society of Young Women Scientist and Engineers," "Society of Young Woman Scientists and Engineers," "Society of Young Women Scientists and Engineers" (last visited Oct. 5, 2020).

[10] Better Business Bureau, BBB Directory Hawaii, https://www.bbb.org/bbb-directory/us/hi (last visited Oct. 5, 2020).

[11] Bloomberg, Company Quick Search, https://www.bloomberg.com/profile/company/3385986Z:US (last visited Oct. 5, 2020).

[12] U.S. Securities and Exchange Commission, EDGAR – Search & Access, https://www.sec.gov/edgar/searchedgar/webusers.htm (last visited Oct. 5, 2020).

[13] U.S. Patent & Trademark Office, Search Trademark Database, https://www.uspto.gov/trademarksapplication-process/search-trademark-database (last visited Oct. 5, 2020).

[14] Hawaii Department of Commerce & Consumer Affairs, Professional & Vocational Licensing Search, https://pvl.ehawaii.gov/pvlsearch/captcha/index.html (last visited Oct. 5, 2020).

[15] Chamber of Commerce Hawaii, Member Directory, https://business.cochawaii.org/list/searchalpha/s (last visited Oct. 5, 2020).

29. SYWSE's lack of any public history of business or commercial activity provides reason to believe that SYWSE did not have sufficient income from its own business revenue, assets, investment earnings, or bona fide capital investments to account for its $150,000 contribution to 1820 PAC.

30. The close temporal proximity between SYWSE's formation, on November 26, 2019, and its $150,000 contribution to 1820 PAC, on December 31, 2019, particularly when considered in the context of SYWSE's apparent lack of any other activities, strongly indicates that SYWSE received funds in excess of $1,000 from other sources for the specific purpose of financing the contribution to 1820 PAC.

31. In light of the publicly available information described above, there is reason to believe that SYWSE violated 52 U.S.C. § 30122 by "[g]iving money . . . all or part of which was provided to the contributor by another person (the true contributor) without disclosing the source of money or the thing of value to the recipient," 11 C.F.R. § 110.4(b)(2)(i), and by "knowingly permit[ting] [its] name to be used to effect" a contribution made in the name of another person. 52 U.S.C. § 30122.

32. Publicly available information also provides reason to believe that SYWSE's manager Jennifer Lam, and any other person who created, operated, or contributed funds to or in the name of SYWSE, violated 52 U.S.C. § 30122 by "[m]aking a contribution of money or anything of value and attributing as the source of the money . . . another person"—SYWSE—who was not the true contributor. 11 C.F.R. § 110.4(b)(2)(ii).

33. Furthermore, because there is no public record of SYWSE engaging in any activities other than making the $150,000 contribution to 1820 PAC, there is reason to believe that SYWSE met the two-prong test for political committee status by: (1) receiving contributions in

excess of $1,000 in a calendar year; and (2) having the "major purpose" of nominating or electing candidates for federal office. Thus, SYWSE, Jennifer Lam, and any other person who created or operated SYWSE, violated FECA by failing to register SYWSE as a federal political committee and file periodic reports with the FEC disclosing the company's contributions and expenditures. *See* 52 U.S.C. §§ 30102-30104.

## ADMINISTRATIVE PROCEEDINGS

34. On February 3, 2020, CLC and Margaret Christ, an individual, filed an administrative complaint with the FEC alleging that SYWSE, Jennifer Lam, and any other persons who created or operated SYWSE had violated FECA's straw donor ban in 52 U.S.C. § 30122, and the Act's registration and reporting requirements for political committees in 52 U.S.C. §§ 30102-30104.

35. On February 5, 2020, the FEC sent CLC and Christ a letter acknowledging its receipt of the administrative complaint and designating it Matter Under Review ("MUR") 7690.

36. Upon information and belief, the FEC has taken no action on Plaintiff's administrative complaint since receiving it, and the administrative complaint has now been pending before the Commission for more than 240 days.

## CAUSE OF ACTION

### *FECA, 52 U.S.C. § 30109(a)(8)(A)*

37. Plaintiff repeats and realleges paragraphs 1-36.

38. Defendant FEC's failure to act on Plaintiff's administrative complaint is contrary to law under 52 U.S.C. § 30109(a)(8)(A), which provides Plaintiff a cause of action for "a failure of the Commission to act on such complaint during the 120-day period beginning on the date the complaint is filed."

## REQUESTED RELIEF

WHEREFORE, Plaintiff requests that this Court:

(1) Declare that the FEC's failure to act on Plaintiff's administrative complaint is contrary to law under 52 U.S.C. § 30109(a)(8)(A);

(2) Order the FEC to conform with this declaration within 30 days pursuant to 52 U.S.C. § 30109(a)(8)(C);

(3) Award Plaintiff its costs incurred in this action; and

(4) Grant such other relief that the Court deems just and proper.

Dated: October 6, 2020

Respectfully submitted,

/s/ Richard A. Graham

Richard A. Graham (DC Bar No. 1500194)
Erin Chlopak (DC Bar No. 496370)
CAMPAIGN LEGAL CENTER
1101 14th Street NW, Suite 400
Washington, DC 20005
(202) 736-2200
agraham@campaignlegalcenter.org
echlopak@campaignlegalcenter.org